Argued December 6, 1977, reversed February 8, 1978

# STATE OF OREGON, *Respondent,*
### *v.*
# EUGENE GARRETT, *Petitioner.*
### (TC 23263, CA 6859, SC 25454)

574 P2d 639

M. Chapin Milbank, Salem, argued the cause for petitioner. With him on the brief was Schlegel, Milbank, Wheeler, Jarman & Hilgemann, Salem.

Charles E. Luukinen, Deputy District Attorney for Polk County, Dallas, argued the cause for respondent.

With him on the brief was John L. Snyder, District
Attorney for Polk County, Dallas.

LENT, J.

## LENT, J.

Defendant was charged by complaint in Polk County District Court with five counts of cruelty to animals under ORS 167.850.[1] He was found guilty on each count by the trial court, whereupon he appealed to the circuit court. Upon a trial de novo before a jury, at the conclusion of the state's case, defendant moved the court for a directed verdict of acquittal.[2] The court denied the motion. The defendant then rested without presenting any evidence and was found guilty by the jury on all five counts. Defendant then appealed to the Court of Appeals, asserting error in the denial of his motion for a directed verdict of acquittal. The Court of Appeals, *State v. Garrett,* 29 Or App 505, 564 P2d 726 (1977), affirmed, and the defendant petitioned this court for review. We allowed review to decide a question of law we expressly held open in *State v. Adkins,* 250 Or 418, 421, 443 P2d 170 (1968): whether the statutory presumption of identity of person from identity of names, ORS 41.360 (25),[3] will support a

---

[1] ORS 167.850 provides:

"(1) A person commits the crime of cruelty to animals if, except as otherwise authorized by law, he intentionally or recklessly:

"(a) Subjects any animal under human custody or control to cruel mistreatment; or

"(b) Subjects any animal under his custody or control to cruel neglect; or

"(c) Kills without legal privilege any animal under the custody or control of another.

"(2) As used in this section, 'animal' includes birds.

"(3) Cruelty to animals is a Class B misdemeanor."

Although defendant was charged in the complaint with violation of ORS 167.850 without specifying subsection, it is clear from the evidence that the state was proceeding under ORS 167.850(1)(b).

[2] The proper motion is for a judgment of acquittal. ORS 136.445.

[3] ORS 41.360(25) provides, in pertinent part:

"All presumptions other than conclusive presumptions are satisfactory, unless overcome. They are disputable presumptions, and may be controverted by other evidence, direct or indirect, but unless so overcome, the jury is bound to find according to the presumption. The following are of that kind:

"* * * * *

"(25) Identity of person from identity of name."

[ 283 ]

conviction when the names are merely similar and there is no other evidence linking the defendant to the crime charged. We hold it cannot and reverse.

The evidence viewed in the light most favorable to the state, *State v. Klutke,* 245 Or 302, 421 P2d 956 (1966), reveals the following:

Five emaciated dogs were found at the dead-end of a short country road, each tied to a separate doghouse. Two of the dogs wore collars with tags which read: "GENE GARRETT—FALLS CITY ORE—PH787-3653." The dogs were taken into custody and nursed back to health. This is the full extent of the state's case. As the Court of Appeals observed, 29 Or App at 507:

> "The state's evidence was far short of the hilt. * * *
>
> "* * * Even easily proved matters such as ownership of the property on which the dogs were found, and defendant's address and telephone number, were not broached by the state's proof. * * *"

The statute under which the defendant was charged clearly indicates that one of the elements which the state must prove is that the animals in question were under the defendant's custody or control. The state contends and the Court of Appeals has agreed that the name on the collars was sufficient in light of the presumption provided by ORS 41.360(25) to sustain the conviction.

In *State v. Adkins, supra,* we considered whether this presumption was applicable in its more typical context, proof of prior conviction in a habitual criminal proceeding. There in 1966 the defendant, Cedric Lee Adkins, was convicted of burglary and further charged as a habitual criminal. Proof of prior conviction was submitted in the form of a 1959 judgment of conviction in the name of "Cedric Adkins." Upon imposition of the enhanced penalty, defendant appealed, asserting lack of proof that the person named in the 1959 judgment was the defendant. In affirming

[ 284 ]

without applying the presumption, we stated, 250 Or at 421:

> "Since in this case there was other proof of identity, we need not decide whether the 1959 judgment standing alone would support a finding that the Cedric Adkins named therein was the same person as Cedric Lee Adkins who pleaded guilty to the principal offense on August 6, 1977. * * *"

In support of this position, we cited the following corroborating evidence: (1) testimony by the sheriff of Benton County that he had personally escorted the defendant to the courtroom to receive the sentence for the 1959 conviction; (2) occurrence of both the 1966 and the 1959 convictions in Benton County; (3) substantial similarity in names; and (4) the fact that Cedric is not a common name.

In *Adkins* we found sufficient evidence to establish the defendant's identity despite the want of "identity of name." In the present case there was no corroborating evidence.[4] State witnesses were put on the stand who could have testified as to the defendant's relationship to the property upon which the dogs were found, as to whether defendant in fact lived in Falls City, Oregon, as to whether the phone number imprinted on the collar was that of the defendant. The right questions were not asked; the necessary answers were not forthcoming. Instead, the state relies on the statutory presumption of identity to provide the vital link between the obviously neglected dogs and defendant's responsibility.

■ The application of this presumption is, in the first instance, a question of statutory construction. The

---

[4]The state contends there was corroborating evidence in the form of "judicial admissions" by defendant's counsel in voir dire and opening statement, citing *State v. Whiteaker et al,* 118 Or 656, 247 P 1077 (1926). Suffice it to say that the statements of counsel here did not amount, in any stretch of the imagination, to judicial admissions which, according to the case cited, 118 Or at 663-64, would be conclusive upon the defendant.

statute itself requires "identity" of name. By application of the plain meaning of this language,[5] we must conclude that the present case is outside its scope. The state has given us no reason, in logic or legal precedent, to read the statute expansively. On the contrary, the more cogent reasoning would require a strict rather than liberal construction of statutorily imposed presumptions, since they are based primarily upon probability and judicial convenience.[6]

■■ We construe ORS 41.360(25) to require literal identity of names to trigger the presumption of identity of persons and thereby present a prima facie case. Similarity of names, without additional evidence, will not support a finding of identity. Therefore, the motion for judgment of acquittal should have been granted.

We do not consider the disposition by the Court of Appeals of a second issue involving conditions of probation. We granted the defendant's petition for review, which does not ask us to review that portion of the Court of Appeals decision, and the state did not file a petition for review of that portion.

The judgment of conviction on each count is reversed.

---

[5]The key word, "identity," is defined as "sameness in all that constitutes the objective reality of the thing." Webster's Third International Dictionary (Unabridged) 1123 (1971).

[6]The probability involved is obvious. The judicial convenience is reviewed in *State v. Cunningham,* 173 Or 25, 55, 144 P2d 303 (1943):

" ' * * * Since identity is more easily disproved than established, weakness of evidence in disproof tends to strengthen the evidence of identity.' [23 C. J., Evidence, p. 57, § 1803]. Without doubt, the difficulty of establishing identity and the ease with which erroneous proof of identity may be swept aside is the basis of the presumption [of identity] created by our code."